```
            DIN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

JOHN EDWARD SHOOK,                )
                                  )
            Plaintiff,             )
                                  )
      v.                          )       1:16CV1237
                                  )
NANCY A. BERRYHILL,               )
Acting Commissioner of Social     )
Security,[1]                      )
                                  )
            Defendant.             )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, John Edward Shook, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 16; see also Docket Entry 13 (Plaintiff's Memorandum), Docket Entry 17 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI, alleging an onset date of March 15, 2009. (Tr. 213-24.) Upon denial of those applications initially (Tr. 71-102, 139-43) and on reconsideration (Tr. 103-38, 147-53), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 156-58). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing (Tr. 43-70), at which Plaintiff amended his onset date to August 1, 2013 (Tr. 46-48, 234). The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 22-37.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 15-21, 321-23), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] me[t] the insured status requirements of the [] Act through December 31, 2013.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since August 1, 2013, the amended alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: hypertension; spinal stenosis, hypertrophy, and osteoarthritis; chronic obstructive pulmonary disease (COPD); history of alcoholism; history of polysubstance abuse; and borderline intellectual functioning.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [Plaintiff] may occasionally climb ladders. [Plaintiff] must avoid concentrated exposure to fumes. Additionally, [Plaintiff] may perform simple, routine, and repetitive tasks in a stable environment at a nonproduction pace.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from August 1, 2013, through the date of this decision.

(Tr. 27-37 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

**B. Assignments of Error**

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's failure to consider, or even discuss, the impact of [Plaintiff's] prescribed use of an oxygen tank on [the] RFC is harmful error that prevents the ALJ's decision from being supported by substantial evidence" (Docket Entry 13 at 6 (bold font omitted)); and

2) "[t]he ALJ's failure to resolve the apparent conflict between . . . his RFC findings and his other findings is harmful error that prevents the ALJ's decision from being supported by substantial evidence" (id. at 13 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 17 at 3-14.)

**1. Impact of Plaintiff's Oxygen Use on RFC**

In Plaintiff's first issue on review, he faults the ALJ for "fail[ing] to consider, or even discuss, the impact of [Plaintiff's] prescribed use of an oxygen tank on [the] RFC" (Docket Entry 13 at 6 (bold font omitted)), and for neglecting to incorporate his use of oxygen into the hypothetical question to the VE (see id. at 12-13 (citing Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989))). In particular, Plaintiff alleges that he "presented

---

[5] (...continued)
review does not proceed to the next step.").

evidence that he required oxygen <u>at night</u> in mid-2014 due to the progression of his COPD" (id. at 6 (emphasis added) (citing Tr. 513, 526)), but when he "failed to improve he was instructed to use his oxygen tank <u>during the day</u> and, as he testified, he required his oxygen with any increased activity to prevent him from feeling faint" (id. (emphasis added) (citing Tr. 54-55, 549, 558)). According to Plaintiff, the ALJ acknowledged in his decision that Plaintiff "'wore 2.5 liters (L) of oxygen at home <u>during the night</u>'" (id. (emphasis added) (quoting Tr. 33)), but "never discusse[d] [Plaintiff's] need for oxygen <u>during the day</u> or the impact that this limitation might have on [Plaintiff's] RFC" (id. at 6-7 (emphasis added)). Plaintiff's arguments in this regard do not provide a basis for relief.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562-63; 20 C.F.R. §§ 404.1545(b), 416.945(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967. Any non-exertional limitations may further

restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)). Moreover, an ALJ need only "adopt credibly established limitations when formulating the RFC." Fuerst v. Colvin, No. 1:15CV1054, 2016 WL 5957602, at *9 n.13 (M.D.N.C. Oct. 13, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Nov. 15, 2016) (Eagles, J.); Bryant v. Colvin, No. 3:13-CV-349-JAG, 2014 WL 896983, at *12 (E.D. Va. Mar. 6, 2014) (unpublished) (District Judge adopting recommendation of Magistrate Judge) (noting ALJ must "only . . . include those limitations that the ALJ considers credibly established"). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

Here, the ALJ did not err by omitting Plaintiff's alleged need to use oxygen during the day from the RFC or the hypothetical question to the VE. Plaintiff alleges that, in mid-2014, when his COPD "failed to improve," an unidentified individual "instructed [him] to use his oxygen tank during the day." (Docket Entry 13 at 6 (citing Tr. 549, 558).) However, a review of the transcript pages Plaintiff cites does not support Plaintiff's allegation regarding daytime oxygen use. From September 27, 2014, to October

10

10, 2014, Plaintiff received inpatient treatment for pneumonia in his left lung base. (See Tr. 533-50.) Although, upon discharge, Dr. Smitha R. Pasula noted that Plaintiff "will be needing home oxygen," Dr. Pasula did not indicate that Plaintiff needed to use such oxygen during the daytime. (Tr. 549; see also Tr. 550 (reflecting same statement).)[6] Dr. Pasula's statement does not amount to a recommendation (much less a prescription) for daytime oxygen use. See Harris v. Colvin, No. 2:14-CV-02092 AC, 2016 WL 4721461, at *6 (E.D. Cal. Sept. 9, 2016) (unpublished) (finding no error in ALJ's refusal to construe physician's "treatment notes as a prescription for '24/7' oxygen use or an opinion that such oxygen use was medically necessary").

Moreover, on October 21, 2014, Plaintiff returned to the hospital complaining of shortness of breath, indicated that he used 2.5 liters of oxygen at home every night and that, during that same week, "he was written a prescription for oxygen during the day but ha[d] not received a canister yet." (Tr. 527 (emphasis added); see also Tr. 530 (reflecting Plaintiff's report to treatment providers that he had "recently been recommended to transition to daily oxygen in addition to his night time oxygen therapy").) Notably,

---

[6] The other transcript page Plaintiff cited to support his claim that an individual "instructed" him to use oxygen during the day (Docket Entry 13 at 6) simply reflects a visit to his primary care physician at Statesville Family Medicine on November 4, 2014, at which family nurse practitioner Ashley Rogers administered a nebulizer treatment and prescribed Symbicort, Ventolin, Spiriva, and albuterol to treat Plaintiff's shortness of breath (see Tr. 558). Nurse Rogers did not mention oxygen usage at all in the treatment note. (See id.)

11

however, the record contains neither a prescription for <u>daytime</u> oxygen nor a treatment note reflecting a medical provider's opinion deeming such oxygen medically necessary.

In addition, Plaintiff used oxygen during the hearing (<u>see</u> Tr. 54-55) and testified that, after his discharge from hospital in October 2014, a male doctor (whom Plaintiff saw one time and whose name Plaintiff could not remember) prescribed oxygen which he used when "go[ing] out . . . to the store or to the doctor's office" (Tr. 55). However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms not entirely credible" (Tr. 30), and noted that Plaintiff's continued smoking might constitute "an indication that his symptoms are not as severe as he purports" (Tr. 31). Plaintiff did not challenge the ALJ's evaluation of Plaintiff's subjective complaints. (<u>See</u> Docket Entry 13.) Under these circumstances, neither Plaintiff's above-quoted reports to treatment providers nor his testimony <u>compelled</u> the ALJ to include restrictions arising out of the daytime use of oxygen in the RFC or hypothetical question. <u>See</u> <u>Harris</u>, 2016 WL 4721461, at *5 (noting that the plaintiff's report to a physician "that she had been 'set up' on oxygen three weeks previously" constituted neither a medical opinion on the necessity of oxygen nor a prescription for oxygen); <u>see also</u> <u>id.</u> at *6 (finding that ALJ did not err in discounting the "plaintiff's testimony regarding her need for oxygen" where "the medical record

12

contained no prescription for oxygen" and ALJ "identified numerous inconsistencies in [the] plaintiff's reports to medical providers and her testimony regarding her respiratory problems and her smoking").

Furthermore, the ALJ accounted for Plaintiff's COPD in the RFC by precluding concentrated exposure to fumes (see Tr. 30), and Plaintiff failed to point to any additional limitations the ALJ should have included in the RFC on account of Plaintiff's alleged use of oxygen during the day (see Docket Entry 13 at 6-13). Those circumstances support denial of relief. See Barnes v. Astrue, No. 1:11CV285-MR-DSC, 2012 WL 5457348, at *3 (W.D.N.C. Oct. 16, 2012) (unpublished) (noting that "[the p]laintiff d[id] not specify any work-related limitations resulting from her oxygen use that the ALJ failed to consider" and that "[t]he ALJ's RFC adequately accounted for [the p]laintiff's respiratory difficulties . . . [by] limit[ing] [the p]laintiff to work 'which does not involve concentrated exposure to pulmonary irritants[,]'" (internal citations omitted)), recommendation adopted, 2012 WL 5457482 (W.D.N.C. Nov. 8, 2012) (unpublished).[7]

---

[7] Plaintiff mentioned, but failed to develop his argument that the ALJ neglected to perform a "function-by-function analysis, . . . to provide a narrative discussion describing how the evidence supports each of his conclusions, . . . [and] to explain how he considered contradictory evidence." (Id. at 12 (citing Mascio, 780 F.3d at 636, and referencing SSR 96-8p)).) That failure precludes relief. See, e.g., Belk, Inc. v. Meyer Corp., U.S., 679 F.3d 146, 152 n.4 (4th Cir. 2012) ("This issue is waived because [the plaintiff] fails to develop this argument to any extent in its brief ."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation
(continued...)

13

In short, Plaintiff's first issue on review does not warrant reversal or remand.

## 2. State Agency Consultants' Opinions

Lastly, Plaintiff maintains that "[t]he ALJ's failure to resolve the apparent conflict between . . . his RFC findings and his other findings is harmful error that prevents the ALJ's decision from being supported by substantial evidence." (Docket Entry 13 at 13 (bold font omitted).) In particular, Plaintiff asserts that the ALJ "assigned 'some weight[']' to the opinions of the [s]tate [a]gency medical consultants" because "'th[o]se opinions were given prior to [] 2014, when [Plaintiff] underwent an MRI of his spine and experienced multiple exacerbations of COPD'" (Id. at 13-14 (quoting Tr. 34)). According to Plaintiff, the ALJ "acknowledge[d] that objective evidence support[ed] a finding that [Plaintiff's] lumbar impairment and COPD worsened or progressed in severity after . . . the date that the [s]tate [a]gency medical consultants issued their opinions[,] . . . but "concluded that [Plaintiff's] RFC was less restrictive th[an] the [consultants'] RFC findings." (Id. at 14 (referencing Tr. 30, 80-81, 114-15).) Plaintiff argues that "remand is appropriate where there are

---

[7] (...continued)
marks omitted)); Hughes v. B/E Aerospace, Inc., No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do."). Moreover, Plaintiff's criticism that the ALJ failed to "address[] or analyze[] any evidence regarding [Plaintiff's] COPD beyond June 2014" (Docket Entry 13 at 7 (citing Tr. 33)) misses the mark. The ALJ observed that Plaintiff "was hospitalized from September 27, 2014 through October 10, 2014 due to exacerbated COPD, which was slow to respond to treatment, with pneumonia." (Tr. 33.)

14

material inconsistencies between an ALJ's RFC determination and other findings by the ALJ." (Id. (citing Stathis v. Sullivan, 964 F.2d 850, 851-52 (8th Cir. 1992)).) These arguments ultimately do not establish reversible error.

Here, the ALJ's analysis of the state agency medical consultants' opinions does not support the more restrictive RFC the ALJ adopted. The ALJ analyzed the opinions as follows:

> [The ALJ] gives some weight to the opinions of the [s]tate agency medical consultants who limited [Plaintiff] to light work with frequent stooping, kneeling, crouching, and crawling and avoiding even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. At the initial level, the [s]tate agency medical consultants opined that [Plaintiff] could do light work with occasional stooping and crawling. Additionally, they believed he should avoid concentrated exposure to hazards and even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. . . . [T]hese opinions were given prior to [] 2014, when [Plaintiff] underwent an MRI of his spine and experienced multiple exacerbations of COPD.

(Tr. 34 (emphasis added) (internal citations omitted).) The ALJ's above-quoted explanation implies that he discounted the state agency medical consultants' opinions, because the consultants offered their opinions prior to a worsening in Plaintiff's spinal and lung impairments, i.e., the ALJ found the consultants' opinions not restrictive enough. (Id.)[8] However, the ALJ formulated an RFC which contained less restrictive postural and environmental limitations than the state agency medical consultants' limitations:

---

[8] Although the MRI actually occurred on August 1, 201**3** (see Tr. 490-91), it still post-dated the state agency medical consultants' opinions given on April 5, 2013, and May 24, 2013 (see Tr. 71-100, 103-36).

> . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [Plaintiff] may <u>occasionally climb ladders</u>. [Plaintiff] must <u>avoid concentrated exposure to fumes</u>. Additionally, [Plaintiff] may perform simple, routine, and repetitive tasks in a stable environment at a nonproduction pace.

(Tr. 30 (emphasis added).) Thus, the ALJ's rationale for affording the state agency medical consultants' opinions "some weight" does not support the RFC he ultimately adopted.

However, the ALJ's error remains harmless under the circumstances presented here. See generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). As the Commissioner points out (see Docket Entry 17 at 13-14), even if the ALJ had adopted the state agency medical consultants' most restrictive postural and environmental limitations, i.e., occasional stooping and crawling (see Tr. 81, 96), frequent kneeling and crouching (see Tr. 115, 132), avoidance of even moderate exposure to fumes, odors, dusts, gases, and poor ventilation (see id.), and preclusion of concentrated exposure to hazards such as unprotected heights and dangerous, moving machinery (see Tr. 81, 96), Plaintiff would remain able to perform the three jobs cited by the VE and adopted by the ALJ at step five of the SEP, (see Tr. 36-37, 63-64). See Dictionary of Occupational Titles ("DOT"), No. 920.685-078 (Packager, Machine), 1991 WL 687942 (G.P.O. 4th ed. rev. 1991)

16

(reflecting occasional stooping and "Not Present" for "Kneeling," "Crouching," "Crawling," "Moving Mech[anical] Parts," "High Exposed Places," and "Atmospheric Cond[itions]"); DOT No. 222.387-030 (Linen-Room Attendant), 1991 WL 672098 (same); DOT No. 369.687-018 (Folder), 1991 WL 673072 (indicating "Not Present" for all of the above conditions); see also Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App'x D, ¶ 7 (U.S. Dep't of Labor 1993) ("SCO") (defining "[a]tmospheric [c]onditions" to include "fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system"). As such, Plaintiff has not shown that the ALJ's error prejudiced him. See Knott v. Colvin, No. 1:13CV332, 2014 WL 2453302, at *6 (M.D.N.C. June 2, 2014) (unpublished) (Schroeder, J.) (concluding that, even if ALJ erred by omitting certain limitations from the RFC and hypothetical question, such error remained harmless where inclusion of those limitations would not impact jobs cited by VE).

In sum, Plaintiff's second assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 12) be denied, that Defendant's

Motion for Judgment on the Pleadings (Docket Entry 16) be granted, and that judgment be entered for Defendant.

                              /s/ L. Patrick Auld
                           **L. Patrick Auld**
                  **United States Magistrate Judge**

October 5, 2017